**State**
**v.**
**Gott**
*[Cite as 4 AOA 90]*

*Case No. 2-88-19*
*Auglaize County, (3rd)*
*Decided June 28, 1990*

*Mr. Randall M. Dana, Ohio Public Defender Mr. Robert L. Lane, 8 East Long Street, Columbus, Ohio 43266-0587, for Appellant.*

*Mr. Mark E. Spees, Prosecuting Attorney, Auglaize County Courthouse, P.O. Box 1992, Wapakoneta, Ohio 45895, for Appellee.*

BRYANT, J.

This is an appeal from a judgment of the Court of Common Pleas of Auglaize County.

This case originated in the Juvenile Division of the Auglaize County Court of Common Pleas with the filing of a complaint charging James David Gott (David) with delinquency. The charges alleged the commission of Aggravated Murder, Rape, and Breaking and Entering.

The Auglaize County Prosecutor on January 14, 1987 filed a motion requesting the Juvenile Court to relinquish jurisdiction over the case and bind David over to the Criminal Division of the Court of Common Pleas. On April 6,7, and 8, 1987, a probable cause hearing was held pursuant to Juv. R. 30 (A) and R.C. 2151.26 (A) (1). At the conclusion of the hearing, the court found that there was probable cause to believe that David committed the alleged acts and ordered an investigation in accordance with Juv. R. 30(B) and R.C. 2151.26(A) (2). A bind-over hearing was held on September 14 and 15, 1987. On October 8, 1987, the juvenile court sustained the motion to transfer David to the Auglaize County Common Pleas Court, Criminal Division for further proceedings on the charges of Aggravated Murder and Rape. The motion for transfer on the charge of Breaking and Entering was denied.

The Auglaize County Grand Jury on October 9, 1987 returned an indictment charging David with one count of Rape in violation of R.C. 2907.02 (A) (1) (b) and one count of Aggravated Murder in violation of R.C. 2903.01 (B). David entered a plea of not guilty to both charges. A jury trial was held on May 17, 18, 19, 20, 23, 24, 25, 26, 27, and 31, 1988. On May 31, 1988, the jury returned a verdict of guilty on both charges. David was sentenced by the court to a life sentence on the Rape charge and life sentence with parole eligibility after twenty years on the Aggravated Murder charge.

It is from the judgment entered on the verdict David now appeals asserting eight assignments of error.

Appellant's first assignment of error is:

"THE TRIAL COURT ERRED WHEN IT ADMITTED INTO EVIDENCE THE TESTIMONY OF JOHN BROWN CONCERNING POPULATION FREQUENCY WHERE SUCH EVIDENCE WAS HEARSAY, LACKED A PROPER FOUNDATION AND VIOLATED THE DEFENDANT'S RIGHT TO CONFRONT WITNESSES AGAINST HIM."

This assignment of error arises from the testimony of John Brown, a forensic analyst with the FBI.

The State offered and the trial court received into evidence at trial the blue jeans Appellant was wearing the day that Betty Head was murdered. The blue jeans had several stains on them, some of which were identified as type AB blood stains, the same blood type as Appellant's, and some stains identified as type O blood, the same blood type as the victim, Betty Head. The initial blood type determinations were made by Sylvia Clark, a forensic analyst with the Ohio Bureau of Criminal Identification. Sylvia Clark also identified an enzyme in the Type O blood stains known as PGM 2-1. John Brown performed an additional test on the Type O blood stains and was able to identify an enzyme known as HP 2-1. Betty Head was blood Type O with enzymes PGM 2-1 and HP 2-1. The blood type and enzymes found on the Appellant's jeans were consistent with the blood type and enzymes of Betty Head.

At trial, John Brown was to offer expert testimony concerning the population frequency of the combination of Type O blood, with PGM 2-1 and HP 2-1 enzymes. Defense counsel objected to the testimony as hearsay and lacking in proper foundation. The basis for the objection was that the source of Mr. Brown's knowledge upon which he based his testimony concerning the population frequencies was scientific literature he had studied and a chart prepared by FBI analyst Robert Spaulding from the same and additional literature. Appellant claims that the chart is hearsay and to permit Brown to use its content at trial

allows Robert Spaulding to testify without cross-examination. Further, John Brown was not qualified as an expert in the field of polymorphisms or population frequencies. Appellant also claims that there is no evidence to indicate that the population frequencies as cited apply to the specific geographic area of St. Marys or Auglaize County.

Mr. Brown was questioned by counsel outside the hearing of the jury concerning his potential testimony on population frequencies. The record indicates that during this *voir dire* Appellant withdrew his objection to the presentation of the specific population percentages to which John Brown would testify. Failure to object does not preserve the assigned error for appeal. *See, State v. Broom* (1988), 40 Ohio St. 3d 277, 288-89; *State v. Wickline* (1990), 50 Ohio St. 3d 114, 119.

However, we will assume that the objection was properly preserved and continue our analysis of the assignment of error.

"Generally, the determination of whether a witness is qualified to offer testimony as an expert is within the sound discretion of the trial court. *State* v. *Jones* (1981), 67 Ohio St. 2d 244, 251, 21 O.O 3d 152, 157, 423 N.E. 2d 447, 451; *State* v. *Hipkins* (1982), 69 Ohio St. 2d 80, 82, 23 O.O. 3d 123, 125, 430 N.E. 2d 943, 945. This discretion is not unlimited, but is subject to the provisions of the Rules of Evidence. Specifically, the expert should possess specialized, technical or scientific knowledge. Evid. R. 702; cf. *State* v. *Maupin* (1975), 42 Ohio St. 2d 473, 478-479, 71 O.O. 2d 485, 488, 330 N.E. 2d 708, 712-713 and *Columbus* v. *Dawson* (1986), 28 Ohio App. 3d 45, 46-47, 28 OBR 56, 57-58, 501 N.E. 2d 677, 678-679. Additionally, the proferred testimony should assist the trier of fact in understanding the evidence or in determining a factual issue and be relevant to the case. Evid. R. 402 and 702; *Williams, supra,* syllabus. As to this latter requirement under Evid. R. 402, the expert's testimony is relevant insofar as it is reliable. *Williams, supra,* at 57-59, 4 OBR at 147-148, 446 N.E. 2d 477-448." *State* v. *Minor* (1988), 47 Ohio App. 3d 22, 25.

"It has been previously held that an expert witness is not required to be the best witness on a particular subject" *Kitchens* v. *McKay* (1987), 38 Ohio App. 3d 165, 169. Under Evid. R. 702, a witness may be qualified as an expert by reason of knowledge, skill, experience, training, or education. Complete knowledge of the field is not required as long as the knowledge the expert does possess will assist the trier of fact. Weak-nesses in the expertise of the witness may be exposed on cross-examination to affect the weight and credibility of the testimony. *See,* Weissenberger's *Ohio Evidence,* section 702.4.

At trial, John Brown testified as to his education, professional experience, and prior experience testifying in trials as an expert in forensic serology. The criteria previously outlined does not require that John Brown be qualified as an expert in polymorphisms or population frequencies. All that is required is that he be familiar with the material and rely on it in the field of study in which he will testify. Mr. Brown testified that he was familiar with numerous texts and journal articles containing studies on population frequency estimates and statistical analysis. Several of these were enumerated at trial by the witness. Mr. Brown also made reference to a chart made by Mr. Spaulding compiling the information contained in the scientific literature into a single study. Appellant objects to the witness' testimony based on this chart as being hearsay. We are compelled to find that the witness' testimony identified sufficient independent knowledge of the subject to make the population frequency estimates without reliance on the chart. Additionally, the witness testified that all the scientific material collated in the chart was generally available to the public as was the chart itself.

Upon applying the analysis articulated in the Rules of Evidence, we find that there was no abuse of discretion in permitting John Brown to testify on the subject of population frequencies in the course of his testimony as an expert witness. The research upon which the witness relied was contained in self-authenticating scientific documents generally available to the public and to members of his profession. Evid. R. 902. If we assume that the chart prepared by Robert Spaulding was inadmissible as hearsay we find that the witness had sufficient independent knowledge from which he could make his statistical determination and any reliance on the chart is harmless error. A proper foundation was laid for the testimony given. The fact that the statistics offered by the witness were of a wider population than St. Marys or Auglaize County affects, perhaps, the weight or persuasiveness of the evidence but not its admissibility.

While Appellant does not otherwise specifically argue the issue of confrontation concerning the Spaulding chart, we believe it clear that the opinion confronting Appellant was that of John Brown, whose testimony was tested by

Appellant's cross-examination and revealed fully the basis for that opinion. The reliability of that basis is a matter for consideration by the trier of fact in assessing the weight and credibility of the opinion evidence.

Not every contributor to the accumulation and reporting of scientific knowledge becomes an accuser of the defendant when an expert who has studied the information accumulated in a given field relies upon it in rendering an expert opinion at a criminal trial.

We overrule Appellant's first assignment of error.

The Appellant's second assignment of error is:

"THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE TRIAL COURT DENIED HIS REQUEST FOR A PRE-TRIAL EVIDENTIARY HEARING ON THE ADMISSIBILITY OF CERTAIN SCIENTIFIC TESTIMONY."

Appellant filed a motion prior to trial to suppress the results of the electrophoretic testing conducted on certain blood stains by the Ohio Bureau of Criminal Identification and the FBI. Appellant asserts that the reliability of electrophoretic testing is a matter in controversy within the scientific community and does not meet the standards of admissibility of Evid. R. 402 and 702. Appellant claims that the trial court should have held a pretrial hearing to determine the admissibility of the evidence. Specifically, Appellant maintains that the trial court should have applied either the standard articulated in *Frye* v. *United States* (1923), 54 U.S. App. D.C. 46 or *United States* v. *Franks* (C.A. 6, 1976), 511 F. 2d 25, cert. denied (1975), 422 U.S. 1042.

The Supreme Court addressed this issue in *State* v. *Williams* (1983), 4 Ohio St. 3d 53, 57-58, stating:

"Although the parties in this case urge this court to adopt one of the special tests described above [*Franks* and *Frye*] and establish a concrete rule on admissibility of voice analysis and identification testimony, we endorse a more flexible standard derived from this state's Rules of Evidence.... [P]referring instead to follow the 'fundamental philosophy of our rules of Evidence, as revealed more particularly in Rules 402 and 702, generally favoring admissibility of expert testimony whenever it is relevant and can be of assistance to the trier of fact.

" * * * * [W]e refuse to engage in scientific nose-counting for the purpose of deciding wheth-er evidence based on newly ascertained or applied scientific principles is admissible. We believe the Rules of Evidence establish adequate preconditions for admissibility of expert testimony, and we leave to the discretion of this state's judiciary, on a case by case basis, to decide whether the questioned testimony is relevant and will assist the trier of fact to understand the evidence or to determine a fact in issue." [citations omitted]

The trial court in its judgment entry of April 14, 1988 addressed the issue as follows:

"In the case of *State* v. *Williams,* 4 O.S.3d 53, the Ohio Supreme Court refused to adopt any specific standard as to the admissibility of scientific evidence as discussed in *Frye* v. *United States,* 293 N.E. 1013, refusing to engage in 'scientific nose counting'. The trial court is to make the determination as to admissibility on a case by case, issue by issue basis.

"This Court, therefore, finds that in the event that the State lays the proper foundation as to relevancy and establishes the other preconditions for the admissibility of expert testimony, such testimony is admissible and subject to the usual testing by the jury as to the reliability to be given to it."

The trial court recognized the standard under *Williams* and the rules of evidence and found that the evidence if properly substantiated could be admitted if relevant and of assistance to the trier of fact. We can find no abuse of discretion in this decision. The Appellant was not denied his constitutional rights to a fair trial and due process of law because Ohio law does not require a pre-trial evidentiary hearing on the admissibility of controversial scientific testimony. The Appellant had ample opportunity to and did submit contradicting expert testimony attacking the credibility of the testing procedure. This attack, however, goes to the weight of the evidence to be determined by the trier of fact and not its admissibility for consideration.

Appellant's second assignment of error is overruled.

Appellant's third assignment of error is:

"THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE THE TESTIMONY OF SYLVIA CLARK CONCERNING THE RESULTS OF THE ELECTROPHORETIC TESTING."

In support of this assignment of error, the Appellant sets forth the testimony of his expert witness attacking the methodology of Sylvia Clark's test results.

Evid. R. 702 reads as follows:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise."

Pursuant to Evid. R. 104(A) the trial court determines the preliminary question of the qualifications of a person to be a witness. Evid. R. 104(E) provides that if the court determines that a witness is competent to testify as an expert the opposing party is free to introduce evidence by which the jury may test the weight or credibility of the expert's testimony.

A proper foundation was laid for presenting Sylvia Clark as an expert witness. Appellant's assertion of flaws in Sylvia Clark's scientific methodology goes to the weight and credibility of her testimony and not to the admissibility of her opinion as an expert.

Appellant's third assignment of error is overruled.

Appellant's fourth assignment of error is:

"THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE THE TESTIMONY OF JOHN BROWN CONCERNING THE RESULTS OF THE ELECTROPHORETIC TESTING."

Appellant incorporates the same arguments from assignment of error three and asserts additionally John Brown's failure to test Appellant's blood for the HP enzyme factor.

Upon the authorities cited above, in respect to assignment of error three we observe that Appellant's assertion of flaws in John Brown's scientific methodology goes to the weight and credibility of his testimony and not to the admissibility of his opinion as an expert. A proper foundation was laid for presenting John Brown as an expert witness.

As to Appellant's additional contention of error in failing to test Appellant's blood for the HP factor we can find no prejudicial error. Again, this goes to the weight and credibility of the testimony and not the admissibility.

Appellant's fourth assignment of error is overruled.

Appellant's fifth assignment of error is:

"THE TRIAL COURT'S DENIAL OF DEFENDANT/APPELLANT'S MOTIONS TO EXCLUDE SYLVIA CLARK'S TESTIMONY, GRANT A CONTINUANCE FOR PURPOSES OF HAVING SYLVIA CLARK MAKE A SECOND DEPOSITION OR ISSUE AN ARREST TO COMPLY [SIC] SYLVIA CLARK'S APPEARANCE AT TRIAL WAS PREJUDICIAL ERROR, DEPRIVING DEFENDANT/APPELLANT OF HIS CONSTITUTIONAL RIGHTS TO CONFRONTATION, COMPULSORY PROCESS, EFFECT [SIC] ASSISTANCE OF COUNSEL AND DUE PROCESS."

Appellant asserts in this assignment of error that the failure of the Appellee to provide him with Sylvia Clark's laboratory bench notes made during her testing of the blood samples prior to taking her deposition was prejudicial and in violation of Crim. R. 16(B) (1) (d). Crim. R. 16(B) (1) (d) states:

"Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, made in connection with the particular case, or copies thereof, available to or within the possession, custody or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney."

Appellant further claims that even though he was provided with the notes prior to trial by order of the court, the trial court's failure to exclude Sylvia Clark's taped deposition, or to order a continuance that defendant might obtain an additional deposition, or to issue an arrest warrant to compel her appearance, despite her absence due, concededly, to a complicated pregnancy, deprived him of his constitutional rights.

First, we do not agree with Appellant's contention that he was entitled to the laboratory notes made by Ms. Clark. As required by Crim. R. 16(B) (1) (d), Appellant at the time of Ms. Clark's deposition was furnished a copy of the report of the results of the tests which was in the possession and control of the prosecutor. "In our view, this complies with the rule requirement of furnishing 'results or reports of scientific tests'. Had it been intended that the testing procedures leading to the results of the test be discoverable, as it is in limited circumstances in R.C. 2925.51 (E), it is reasonable that the rule would have so specified." *State* v. *Jones* (July 14, 1980), Athens App. No. 1025 (unreported). *See also, State* v. *Cross* (1975), 48 Ohio App. 2d 357, 360; *State* v. *Goble* (1982), 5 Ohio App. 3d 197, 198. We agree with the foregoing holding as articulated by the Court of Appeals of the Fourth Appellate Judicial District of Ohio, in *Jones*. We also note that

during her deposition Ms. Clark testified to the methods she used to reach the conclusions set forth in her report.

However, if we assume that Ms. Clark's laboratory notes were as discoverable as was her final report used at her deposition, we must examine Crim. R. 16(E) (3). Crim. R. 16(E) (3) states:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing into evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."

To sustain his assignment of error, the Appellant must demonstrate prejudicial error as a result of the trial court's discretion in its application of Crim. R. 16(E) upon motion for sanctions. We note from the record that the trial court ordered the laboratory notes delivered to Appellant on May 4, 1988. Further, Appellant claims that the copies of the notes delivered were illegible and that he did not receive a legible copy until sometime during trial. This order was given sufficiently before the May 17, 1988 trial date to allow Appellant time to seek to depose Ms. Clark. We also note from the record that Ms. Clark's laboratory notes were admitted into evidence by stipulation of the parties. Appellant had the opportunity to have his expert witness, Dr. Lavett, examine and criticize Clark's testing techniques by interpreting at will the laboratory notes at trial while the Appellee had no opportunity to rehabilitate Ms. Clark or explain her notes. The strategic advantage to Appellant is obvious.

Crim. R. 16(E) (3) permits a trial court to order discovery and to make any other order as it deems just under the circumstances. Although it is doubtful that the laboratory notes were discoverable, as noted by the trial court, the Appellant was still given access to them in light of Ms. Clark's inability to appear at trial. Additionally, the notes were admitted into evidence and were used by Appellant's own expert witness to attack Ms. Clark's credibility without the state's opportunity for rehabilitation of the evidence criticized.

We can find no abuse of discretion prejudicial to Appellant in the trial court's rulings in this regard. Appellant had ample time to obtain a second deposition of Ms. Clark prior to trial. The laboratory notes were admitted in evidence and used to rebut the testimony of Ms. Clark's taped deposition. As to the trial court's failure to order Ms. Clark's arrest and appearance, the record does not disclose that she had personal knowledge or notice that a subpoena had been issued for her appearance at trial. Under the circumstances such stringent measures would have been improper.

Appellant has failed to demonstrate prejudice resulting from the trial court's decision on this issue. We find no abuse of discretion by the trial court and no resulting infringement of any of Appellant's constitutional rights.

Appellant's fifth assignment of error is overruled.

Appellant's sixth assignment of error is:

"THE JUVENILE COURT ERRED IN RELINQUISHING JURISDICTION OVER THE CASE AT BAR. THE EVIDENCE PRESENTED IN THE JUVENILE COURT WAS INSUFFICIENT TO SUPPORT A TRANSFER FROM THE JUVENILE DIVISION TO THE CRIMINAL DIVISION OF THE COURT OF COMMON PLEAS."

R.C. 2151.26 sets forth the procedure and criteria for relinquishment of jurisdiction by the juvenile court to the criminal division of the court of common pleas for the purpose of criminal prosecution. R.C. 2151.26 states in pertinent part:

"(A)(1) Except as provided in division (A) (2) of this section, after a complaint has been filed alleging that a child is delinquent by reason of having committed an act that would constitute a felony if committed by an adult, the court at a hearing may transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, after making the following determinations:

"(a) The child was fifteen or more years of age at the time of the conduct charged;

"(b) There is probable cause to believe that the child committed the act alleged;

"(c) After an investigation, including a mental and physical examination of the child made by a public or private agency, or a person qualified to make the examination, that there are reasonable grounds to believe that:

"(i) He is not amenable to care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children;

"(ii) The safety of the community may require that he be placed under legal restraint,

including, if necessary, for the period extending beyond his majority.

"(2) After a complaint has been filed alleging that a child is delinquent by reason of having committed an act that would constitute aggravated murder or murder if committed by an adult, the court at a hearing shall transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, if the court determines at the hearing that both of the following apply:

"(a) There is probable cause to believe that the child committed the alleged act;

"(b) The child previously has been adjudicated a delinquent child for the commission of an act that would constitute aggravated murder or murder if committed by an adult."

R.C. 2151.26 is to be applied in conjunction with Juv. R. 30. Juv. R. 30 reads in part:

"(A) Preliminary hearing. In any proceeding where the court may transfer a child fifteen or more years of age for prosecution as an adult, the court shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that such act would be a felony if committed by an adult. Such hearing may be upon motion of the court, the prosecuting attorney or the child.

"(B) Investigation. If the court finds probable cause, it shall continue the proceedings for full investigation. Such investigation shall include a mental and physical examination of the child by the Ohio Youth Commission, a public or private agency, or by a person qualified to make such examination. When the investigation is completed a hearing shall be held to determine whether to transfer jurisdiction * * *

"(C) Prerequisites to transfer. The proceedings may be transferred if the court finds there are reasonable grounds to believe:

"(1) The child is not amenable to care or rehabilitation in any facility designed for the care, supervision and rehabilitation of delinquent children; and

"(2) The safety of the community may require that the child be placed under legal restraint for a period extending beyond the child's majority.

"* * *

"(E) Determination of amenability to rehabilitation. In determining whether the child is amenable to the treatment or rehabilitative processes available to the juvenile court, the court shall consider:

"(1) The child's age and his mental and physical health;

"(2) The child's prior juvenile record;

"(3) Efforts previously made to treat or rehabilitate the child;

"(4) The child's family environment; and

"(5) School record.

"* * *

"(G) Order of transfer. The order of transfer shall state the reasons therefor.

"(H) Release of transferred child. The juvenile court shall set terms and conditions for the release of the transferred child in accordance with Criminal Rule 46."

Appellant asserts an abuse of Discretion by the juvenile court in transferring David to the criminal division of the court of common pleas. Specifically, Appellant contends that there was insufficient evidence presented at the Preliminary Cause hearing of April 6, 7, and 8, 1987 and the Relinquishment hearing of September 14, and 15, 1987 to support the trial court's finding of reasonable grounds to believe that David would not be amenable to care or rehabilitation in any facility designed for the care, supervision and rehabilitation of delinquent children and that the safety of the community required that David be placed under legal restraint for a period extending beyond the child's majority. Additionally, Appellant maintains there is insufficient evidence to support a finding of probable cause to believe that David raped and murdered Betty Head.

Pursuant to R.C. 2151.26 and Juv. R. 30 two hearings were held, the first to determine the question of probable cause and the second on the motion to relinquish. At the hearing on probable cause, evidence was submitted that if believed, connected the Appellant to the crimes of murder and rape. Included in the evidence was the autopsy report of the findings of the pathologist showing the approximate time and cause of the death of Betty Head and evidence supporting a conclusion of forced sexual penetration of the victim's vagina within few minutes prior to her death. Also presented was evidence showing the presence of blood of the victim's blood type on the trousers worn by the appellant on the day of the murder and rape. Evidence was shown of footprints made in the vicinity of the victim's body by shoes similar to Appellant's. Also shown was evidence of pubic hair similar to Appellant's, dissimilar to the victim's, found on the victim's body. Probable cause is determined from the presence of substantial credible evidence. We

find that the evidence presented was credible and sufficient to substantiate a finding of probable cause. Additionally, "[a] finding of probable cause by the court conducting the preliminary hearing is not appealable. Crim R. 5(B) (5). Moreover, the general rule is that a subsequent indictment by the grand jury renders any defects in the preliminary hearing moot * * * 'Any alleged defects in the initial hearing were cured by the subsequent indictment.' * * * 'Likewise, once an indictment has been approved the preliminary proceedings are not subject to either direct or collateral attack because the defendant has been afforded an independent determination that a prima facie case exists.'" *State* v. *Washington* (1986), 30 Ohio App. 3d 98, 99. [citations omitted.]

We now address the issue of whether the Appellant was amenable to care or rehabilitation in any facility designed for the care, supervision and rehabilitation of delinquent children and whether the safety of the community required that he be placed under legal restraint for a period extending beyond his majority. The juvenile court on October 8, 1987 gave in detail and at length its reasons for its determination. We also before us a transcript of all the evidence and investigative reports presented to the juvenile court.

The Ohio Supreme Court in *State* v. *Carmichael* (1973), 35 Ohio St. 2d 1, syllabus set forth specific guidelines for the application of R.C. 2151.26:

"1. A hearing under R.C. 2151.26 is a preliminary stage of the juvenile judicial process and contemplates that the court should have considerable latitude within which to determine whether it should retain jurisdiction.

"2. What constitutes 'reasonable grounds' for relinquishing jurisdiction under R.C. 2151.26(A) (3) is within the sound discretion of the court, after an 'investigation' is made."

"It is not necessary to determine that the child is not amenable to care or rehabilitation in an institution for delinquent children. Rather the court must determine that there are *reasonable grounds to believe* such is the case." *State* v. *Whiteside* (1982), 6 Ohio App. 3d 30, 34. "Thus, the 'investigation' is not required to show that the child *cannot* be rehabilitated as a juvenile but only that there are *reasonable grounds* to believe that he cannot be rehabilitated." *Carmichael, supra* at 6. (Emphasis added.)

" * * *[T]he duty imposed upon the court, before ordering a relinquishment of jurisdiction, is, after investigation, to find that there are rea-

sonable grounds to believe that the child is one who will not be readily brought to yield, submit and respond to care, supervision and rehabilitation in any facility designed for such care of delinquent children and that the second requirement as to legal restraints exists. And as stated by the Supreme Court in *State* v. *Carmichael, supra*, the hearing to determine these issues is one wherein the juvenile court should have considerable latitude in its determination to retain or transfer jurisdiction, and the determination of what constitutes 'reasonable grounds' under R.C. 2151.26(A) (3) is within the sound discretion of the court after an investigation is made." *Whiteside, supra* at 35.

"We note that the court must not only determine that the court has reasonable grounds to believe that the child is not amenable to care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children, but also find reasonable grounds to believe '[t]he safety of the community may require that the child be placed under legal restraint for a period extending beyond the child's majority.' In the absence of specific guidelines in regard to this second factor, it is appropriate for the court to consider the nature of the offense, the existence of aggravating circumstances, and the extent of any apparent antisocial conduct." *State* v. *Oviedo* (1982), 5 Ohio App. 3d 168, 171-172.

As outlined previously, in determining amenability to rehabilitation Juv. R. 30(E) sets forth five additional factors to be considered. "[N]ot all of the relevant factors need be resolved against the juvenile in order to justify the transfer, nor is the court required 'to make an arithmetic-type calculation as to the weight given by it to each fact.'" *Oviedo, supra* at 171. [citations omitted.]

After a complete review of the record before the juvenile court and in recognition of the great degree of latitude to be afforded juvenile courts when determining whether jurisdiction should be retained, we must agree with the conclusion of the juvenile court that there was sufficient evidence to sustain a finding of the existence of reasonable grounds to believe the Appellant would not be amenable to care under the juvenile system and that legal restraint beyond the age of majority might be required.

Appellant's sixth assignment of error is overruled.

Appellant's seventh and eighth assignments of error will be addressed together. The assignments of error are:

"7. THE JUDGMENTS OF CONVICTION OF AGGRAVATED MURDER AND RAPE ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED.

"8. THE JUDGMENTS OF CONVICTION FOR AGGRAVATED MURDER AND RAPE MUST BE REVERSED DUE TO THE INSUFFICIENCY OF THE EVIDENCE THAT DAVID GOTT WAS THE PERPETRATOR OF THOSE OFFENSES."

The pertinent elements of the crimes of which the Appellant is charged are as follows:

"R.C. 2907.02 Rape

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when either of the following apply:

" * * *

"(b) the other person is less than thirteen years of age, whether or not the offender knows the age of such person.

"(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

"(B) Whoever violates this section is guilty of rape, an aggravated felony of the first degree. If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life.

"(C) A victim need not prove physical resistance to the offender in prosecutions under this section.

"R.C. 2903.01 Aggravated murder.

"(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.

"Whether the members of this court would have drawn the same inferences from the evidence presented in this trial is of no consequence * * * It is the minds of the jurors and not the minds of the judges of an appellate court that are to be convinced. The jurors see the witnesses and observe their demeanor. The credibility to be given to each and all of these witnesses and to part or all of their respective testimony is for the jury. The question to be determined by an appellate court is: 'Does the record contain evidence from which a jury would be justified in concluding that the accused was guilty beyond a reasonable doubt?'" *State* v. *Sheppard* (1956), 165 Ohio St. 293, 300.

In a case such as the one before us, where much of the evidence is circumstantial the Ohio Supreme Court held in *State* v. *Kulig* (1974), 37 Ohio St. 2d 157, syllabus, that "[c]ircumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt."

This court held in *State* v. *Williams* (1976), 47 Ohio App. 2d 330, 336 in reliance upon paragraph 6 of the syllabus in *State* v. *Sheppard* (1956), 165 Ohio St. 293 "that the determination of reasonableness includes a determination of whether the hypothesis is reasonable in view of the weight and credibility that the jury gives to the evidence."

"The Supreme Court of the United States recognizes this prerogative of the jury in the case of *Holland* v. *United States*, 75 S.Ct. 127, 137, where it says:

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

" * * *

"More specifically to the point, however, are the observations of Judge Hunter of the Supreme Court of Indiana in the case of *Manlove* v. *State*, 232 N. E. 2d 874, 878:

"'[W]here there are two *reasonable inferences* arising from the circumstantial evidence in a case, one of *guilt* and *another of innocence*, it is not the duty or right of this Court to reverse simply because *we* might believe the circumstances to not exclude every reasonable hypothesis of innocence. It is the jury's function, not ours, to *weigh conflicting evidence* or uncontradicted evidence from which *conflicting, yet reasonable*, inferences may be drawn and then determine whether such evidence excludes every reasonable hypothesis of innocence * * *'."

" * * *

"We conclude that even with respect to conflicting and coexistent hypotheses that are reasonable in the abstract a jury must consider all of the evidence in the case and apply its own determinations of weight and credibility to determine whether the hypothesis of guilt excludes that of innocence. If this determination is in the affirmative it may convict, but in the negative, it must acquit." *Williams, supra* at 336-337.

"Two years after our decision in *State v. Williams, supra,* the Supreme Court of Ohio confirmed our conclusion that the determination that the circumstantial evidence is irreconcilable with any reasonable theory of an accused's innocence is a factual question for the jury. *See, State v. Gravens* (1978), 54, Ohio St. 2d 114, 118. Accordingly, in a case where circumstantial evidence is relied upon, once the trier-of-fact has reached its decision, " * * * an appellate court * * * will reverse only where the evidence is insufficient as a matter of law to enable the jury to exclude a reasonable hypothesis of innocence.' *State v. Gravens, supra,* at p. 119." *State v. Richey* (December 28, 1989), Putnam App. No. 12-87-2 (unreported).

The autopsy evidence presented at trial indicated that eleven year-old Betty Head was raped twenty to thirty minutes prior to her death. Death resulted from asphyxiation due to strangulation. The victim was then stabbed in the neck and throat. Additional evidence presented at trial placed the Appellant at the victim's home the day of the murder and indicated that he was one of the last people to see her alive. Footprints found in the field near the body were similar to the Appellant's. Blood on the jeans of the Appellant matched that of the victim. Pubic hairs found on the body of the victim were similar to Appellant's. Testimony of witnesses who observed Appellant the day of the murder was consistent, if so construed, with a determination of guilt.

"Accordingly, we also conclude in application to the instant case that since there was substantial evidence of probative value which, if believed, would support a determination of both a reasonable hypothesis of guilt and a reasonable hypothesis of innocence we cannot substitute our judgment for that of the jury when in consideration of all the evidence in the case and applying their own determination of weight and credibility they arrived at a verdict of guilty." *Williams, supra* at 337.

Appellant's seventh and eighth assignments of error are overruled.

For the reasons stated above and upon the authorities cited and discussed the judgments of the Criminal Division of the Court of Common Pleas of Auglaize County is affirmed.

*Judgment affirmed.*

MILLER and EVANS, J.J., concur.